THERMUTHIS H. VAN EATON ET AL. *v.* NANCY NAPIER, EXECU-
TRIX.

LIMITATION OF ACTIONS.    *Right of action on collateral barred when debt barred.*
   *Note held for another, when not in trust.*
   In 1860 C. & L., partners in business, borrowed money from S. to pay for a tract
   of land which they had bought. In 1866 they sold the land to A., and took
   his promissory note for the purchase-money, which, by agreement between
   them (C. and L.), was made payable to S. It was further agreed between C.
   and L. that the former should deliver A.'s note to S., or collect the proceeds
   thereof and pay the same to S. C. failed to do either. The existence of
   this note and the agreement in respect thereto were never made known to

S., who died in 1881. In 1885 the legal representative of S.'s estate filed a bill in chancery charging that C. held the note of A. in trust for S., and that it was secured by a vendor's lien on the land for which it was given, and praying that such land be sold and the proceeds thereof applied to the payment of the amount due on the note. *Held,* that no legal and equitable title to A.'s note passed to S., and when the debt of C. & L. to him became barred by the statute of limitations he lost all right to collect such debt, either from the debtors directly, or by resort to the note of A.

APPEAL from the Chancery Court of Coahoma County.

HON. W. G. PHELPS, Chancellor.

In 1858 Cobb & Ligon, partners in the business of planting, bought a tract of land. In 1860 they borrowed money from Thomas Skidmore to pay for this land. In 1866 the firm was dissolved, and in order to settle up the firm business the land was sold to one Anderson, and Anderson's note for the purchase-money was, by agreement between Cobb and Ligon, made payable to Skidmore. It was further agreed between Cobb and Ligon that Cobb should take the note and deliver it to Skidmore or collect the proceeds and pay it over to him. Cobb never did either. Skidmore knew nothing of this agreement between Cobb and Ligon. In 1867 Cobb surrendered the above-mentioned note to Anderson, the maker, in consideration of his conveying the land for which the note was given to Miss Amelia Burton, to whom Cobb was largely indebted. In 1875 Cobb and his wife executed a deed of trust on a large tract of land which they owned individually, to J. L. Alcorn as trustee, in trust for their two children, Thermuthis H. Van Eaton and R. L. Cobb, without any valuable consideration therefor. In 1881 Skidmore died, and in June, 1885, his widow, now Nancy Napier, as executrix of his estate, filed a bill setting out the above facts and claiming as matter of law that through the arrangement above referred to Cobb became a trustee for Skidmore for the note of Anderson, and that Skidmore had a vendor's lien on the land for which the note was given to secure the payment thereof. The bill prayed for a sale of the land conveyed by Cobb to Alcorn as trustee, and that the proceeds thereof be applied to payment of amount due on the Anderson note. The bill does not show when the debt of Cobb &

Ligon to Skidmore matured, nor when the Anderson note matured; but it states that Cobb fraudulently concealed from Skidmore the fact that the Anderson note was payable to him and was held by Cobb for his benefit. The defendants demurred to the bill on the grounds, amongst others, that the bill fails to show when the debt of Cobb & Ligon or the note of Anderson matured; that it does show that the debt sued for is barred by the statute of limitations, and that it shows that the Anderson note was never delivered to Skidmore or any one authorized by him to receive the same. The demurrer was overruled and the defendants appealed.

*D. A. Scott,* for the appellants.

It appears from the bill that Asa Cobb owned the very property the sale of which appellee prays for until the year 1875, yet appellee's testator failed and neglected to even so much as attempt to collect the large debt due by Cobb & Ligon to him; this is a circumstance of much importance, for it is not reasonable to suppose that Skidmore would have remained quiet for such a length of time when a mere examination of the records of this county would have given him information as to Cobb's ownership of property more than sufficient to satisfy his claim; but now that the lips of both Cobb and Skidmore have been closed by the hand of death his widow seeks to subject the land to sale which passed out of the possession of said Asa Cobb more than ten years ago. The Anderson note in favor of Skidmore was never delivered to him or to any one authorized by him to receive it, hence, the note never became a binding obligation. 1 Danl. Neg. Ins. 52 and 205. That the delivery of the note and the assent of the payee is essential will appear from an examination of 52 Miss. 828; 48 Ib. 450; 26 Am. Dec. 741; 60 Ib. 49; 6 Ib. 708.

*Frank Johnston,* on the same side.

There never was a trust vested in Skidmore.

His original debt of 1860 remained unimpaired and unaffected; and this was a joint and several debt due by Cobb & Ligon as partners.

It would be grotesque to argue that this was a concealed cause of action, and absurd to contend that he *was deterred* from

pursuing this claim by reason of anything that Cobb or Ligon did.

It is clear, and obviously so, that the original claim has been barred nearly three times over.

Moreover, the *laches* of Skidmore in respect to the original debt. is of such an *extraordinary character*, that the natural presumption is irresistible that it has been satisfied in some way.

This delay cannot be accounted for on the ground that Skidmore relied on his supposed trust, for the complainant is at great pains to deny all knowledge of its existence.

*J. H. Wynn,* for the appellee.

It is earnestly urged that complainant is barred because the bill does not allege any positive act of concealment on the part of Cobb; but complainants insist that the statements of the bill on that point are explicit enough, even if a positive act of concealment were necessary to prevent the running of the statute; but in this case, Cobb being a trustee, his withholding from Skidmore the knowledge of his possession of the note and of his conversion of the same to his own use (for he used the note in payment of his own debt) was such a concealment as avoided the statute; for where a party is in duty bound to speak, it is a fraudulent concealment for him not to do so. When Ligon left the note with Cobb to be delivered to Skidmore, or to be collected and paid to him, and he, Cobb, promised so to do, Cobb was bound to comply with his promise, and was bound to notify Skidmore of the transaction, and his failure so to do, together with his fraudulent conversion of the note to his own use, was equivalent to a positive concealment. It is the duty of the trustee to disclose, without reservation, all matters connected with the trust. Defendants overlook the fact that in law, as in religion, there are sins of omission, etc. 5 Cush. 284; 1 Cush. 597.

*Calhoon & Green,* on the same side.

The right of Skidmore is not dependent upon the original note, nor is the right of action the original note. It is a cause of action arising from a conversion of the trust estate by the trustee. In *Clarke* v. *Goodrum,* 61 Miss. 739, where the note and will were concealed by

the party, he was held liable as executor *de son tort.* Here the trust was concealed *by the trustee* and afterward converted. Under the *firm* note there was a liability as a firm, but this act of the trustee of the firm in the concealment of the cause of action and its conversion constituted an independent liability of the trustee not measured by the six year statute of limitations or cognizable only in courts of law. *Clarke* v. *Goodrum, supra,* is especially strong in the case at bar.

COOPER, C. J., delivered the opinion of the court.

The demurrer to the bill should have been sustained. The debtors, Cobb and Ligon, by an arrangement between themselves not participated in by the creditor, designated a fund which should be appropiated to the discharge of the note held by Skidmore, and it was left to Mr. Cobb to carry out the scheme. But no title legal or equitable to the Anderson note passed to Skidmore, and when the note executed by Cobb & Ligon became barred by limitation, he lost all right to collect the debt thereby secured either by resort to the general estate of the debtors or from the proceeds of the Anderson note. If Cobb has failed to appropriate the proceeds of this note to the payment of the Skidmore debt, and that debt has become barred by limitation, Ligon and not Skidmore is the person who could have called him to account for conversion of the fund. The extent of Skidmore's right, if he at any time had any right to that specific fund, was to have it applied to the payment of his debt, and when he ceased to be creditor to Cobb and Ligon, he lost all right which rested upon that relationship.

*The decree is reversed, demurrer sustained, and bill dismissed.*