Middleton, J.
Section 5328-1, General Code, provides :
“All moneys, credits, investments, deposits, and other intangible property of persons residing in this state shall be subject to taxation,” with certain exceptions. (Emphasis supplied.)
Section 5328-2, General Code, fixes the situs of property for taxation, as to which subject there is no dispute herein.
Section 5638-1, General Code, prescribes a tax rate of two mills on the dollar with respect to “deposits.”
Section 5411-1, General Code, authorizes the Tax Commissioner on or before December 5 to fix the “tax day,” i. e., the day between November 1 and November 30 “as of which the taxable deposits in financial institutions shall be listed and assessed.” (Under Section 5725.05, Revised Code, tax day is fixed by the Board of Tax Appeals.)
Section 5411-2, General Code, provides:
“The report of each financial institution made pursuant to Section 5411 of the General Code shall also show the aggregate balances of taxable deposits of its *67 depositors, in each county in which the institution maintained an office or offices for the receipt of deposits at the end of business on the day fixed by the Board of Tax Appeals pursuant to Section 5411-1 of the General Code.” (Emphasis supplied.) This section also requires the financial institution to report the names and addresses of all depositors whose deposits were wholly withdrawn between the November tax day and the date on which notice of the fixing thereof was received, or if no such notice was received, then between the day so fixed and January 1 next, together with the amount of taxable deposits of each such depositor on the day so fixed.
Section 5412, General Code, requires the Tax Commissioner, upon receiving the report provided for in Section 5411-2, to ascertain and assess the various items covered by the report, including “the amount of taxable deposits of such institution in each county.” It then provides, “such amounts shall be assessed in the name of such financial institution excepting that the amounts of taxable deposits wholly withdrawn from each such institution within the times mentioned in Section 5411-2 of the General Code and separately set forth in such report shall be subtracted from the amount of taxable deposits so assessed and separately assessed in the names of such respective depositors.”
Section 5673-2, General Code, provides that a financial institution so required to pay “the taxes assessed upon its deposit accounts, as taxable property of its depositors * * * may, upon receipt of notice of the day fixed for the listing of such deposits, charge the amount thereof to and deduct the same from the deposit of each depositor, * * * for reimbursement of the taxes so payable, with legal interest.”
Overshadowing and affecting all the foregoing statutes is Section 5324 which defines “deposits.” That section is in the chapter entitled “Definitions,” *68 and its provisions are applicable, unless otherwise stated, ta the entire portion of the Code designated as “Title I: Taxation,” in which all the above sections are found.
Section 5324, General Code, reads in full:
“The term ‘deposits’ as so used, includes every deposit which the person owning, holding in trust, or having the beneficial interest therein is entitled to withdraw in money, whether on demand or not, and whether evidenced by commercial or checking account, certificate of deposit, savings account or certificates of running or other withdrawable stock, or otherwise, excepting (1) unearned premiums and surrender values under policies of insurance, and (2) such deposits in financial institutions outside of this state as yield annual income by way of interest or dividends in excess of four per centum of the principal sum so with-drawable. ’ ’
Are the amounts held by banks to satisfy certified checks “deposits”? We are here dealing with tax statutes and a statutory definition. All authorities and decisions must be scrutinized with that fact in mind. In studying Section 5324 we at once observe that the term, “deposits,” is defined by using the same word in the definition. “The term ‘deposits’ * * * includes every deposit.” The import of this would seem to be that no unusual or strained construction is to be placed upon the term. The term is intended to be understood as it is in ordinary conversation and business transactions. But the definition then states that the deposit must be one which is withdrawable in money by the person owning, holding in trust or having the beneficial interest therein. Under the agreed statements of fact, the amount of a certified check is charged to the account of the drawer and is removed from his deposit. He no longer has any control over that amount of money. In fact, should an officer or em *69 ployee of a bank upon certification of a check fail forthwith to charge the amount of the check against the account of the drawer, he is subject to fine and imprisonment under Section 710-173, General Code. When the holder of the check procures the certification, the drawer is so far removed from the transaction that under Section 8293, General Code, he is no longer liable on the check. The bank becomes primarily liable.
That the amount of a check when certified is completely withdrawn from the deposit of the drawer is recognized in Blake v. Hamilton Dime Savings Bank Co., 79 Ohio St., 189, 87 N. E., 73, 128 Am. St. Rep., 684, 20 L. R. A. (N. S.), 290.
It is manifest that after certification the drawer of the check does not have the amount covered by the check on deposit subject to his withdrawal. That amount is no longer a “deposit” under the definition contained in Section 5324, General Code, and with respect to that amount the drawer of the check is no longer a depositor. This is true whether the drawer or holder of the check procures the certification. It follows that the amount held by a bank on tax day to redeem a certified check is not taxable upon the theory advanced by the Board of Tax Appeals.
Is the amount, so held, taxable on the theory adopted by the Tax Commissioner, which is that the amount set aside by a bank to satisfy and secure payment of a certified check is a deposit; that the holder of the check is the owner of the deposit; that the statutory requirements for taxing the amount are thus satisfied; and that the bank must, therefore, include the amount in its tax return and pay the tax thereon. This theory of the Tax Commissioner is vulnerable in several particulars.
It should first be observed that under the statutes the incidence of the tax is upon the depositor, not on the bank. As stated by Judge Williams in the opinion *70 in Merchants & Mechanics Federal Savings & Loan Assn. v. Evatt, Tax Commr., 138 Ohio St., 457, 467, 35 N. E. (2d), 831, 135 A. L. R., 1474:
“The intent of the state statutes is to make the financial institution the collector of the tax on deposits. * * * So the tax is assessed in the name of the depositee * * *. Thus it is the credit which is taxed and the creditor, that is, the depositor, is required ultimately to bear the burden. The fact that the depositee may elect not to pass the charge on, as is often the case, cannot affect the legal rights of the parties. ’ ’
There is no indication of legislative intent to require banks to report and pay tax on any amounts as “deposits” under circumstances such that the tax so paid can not be passed on to a depositor. On the contrary, the intent to avoid such result is indicated by the provisions in Section 5412, General Code, which require a bank to report only “taxable deposits” and then carefully relieve the bank from any duty to pay a tax on amounts of deposits on tax day but withdrawn between that day and the date on which the bank received notice of the tax day.
We are not here concerned with any action which may be taken by the state to pursue individuals and collect taxes from them. We are concerned only with the'extent of the duty of a bank to return and pay taxes on the “deposits” of individuals which were in the bank on the November tax day. If a depositor draws out his money and carries it in his pocket, or if his checks are certified so as to remove the amounts thereof from his deposit account, or if the holder of a certified check should hold it and wrongfully fail to report it for taxation, a problem of tax enforcement against an individual would arise, but no such problem is before this court. If there is any flaw in the statutes with respect to taxing money or the amounts of money in the hands of financial institutions, the General Assembly *71 and not the courts must make any desired legislative change.
Does the mere holder of a certified check become a “depositor” under the definition set out in Section 5324? The question should answer itself. He has opened no account in the bank, he has made no deposit in the usual and commercial understanding of that term. This is true even with respect to the payee or other holder who procures the certification. Furthermore, the holder on tax day may be several times removed, by endorsement, from the one who procured the certification. The bank has no means of identifying the holder on tax day. The bank, by certifying the check, has become liable for the full amount of the check to the one who presents it for payment. There is no money in the hands of the bank or credit under its control against which it can assert a lien for any tax it might pay. There is nothing in the statutes which permits the bank to deduct the tax from the amount of the certified check when it is presented for payment. Although the holder can demand payment of the check at will and his demand must be satisfied, he still does not qualify as a depositor in the usual and ordinary sense.
It is argued that a certified check is a “ certificate of deposit,” as that term is used in Section 5324, evidencing an amount withdrawable by the holder on demand. Certificates of deposit are a recognized type of evidence of money deposited and are in essence receipts issued to the depositors. They are not nego: tiable instruments and we find no reasonable ground for classifying certified checks as such.
Since the issues of these cases arise under particular statutes of Ohio, not generally enacted in other states, it is not surprising that authorities exactly in point are not found. Two cases are such as to merit citation:
*72 In Franklin Trust Co. of Philadelphia v. City of Philadelphia, 111 Pa. Supr., 158, 169 A., 452, the city-required the bank to deposit bonds and securities with it, to guarantee the city’s funds “deposited or to be deposited with it * * *, and * * * account for and pay over and deliver the same * * * when the same shall be demanded.”
In the course of its business, the city came into possession of a certified check, accompanying a proposal to furnish street signs for the city, to guarantee the good faith of the bidder. The check was drawn on the Franklin Trust Company but had not been endorsed or deposited or presented for payment when the bank closed its doors and its property and assets were taken over by the secretary of banking.
The court held that the certified check was not a deposit of the city, and was not guaranteed by the bonds and securities held by it to guarantee its deposits.
In Lloyd v. Butler County State Bank, 122 Kan., 835, 253 P., 906, 51 A. L. R., 1030, the question arose whether the holder of a certified check was a depositor entitled to be paid from the guaranteed fund to protect the bank’s depositors when the bank failed.
In the opinion in that case, at page 836, the following comment appears:
“A certified check is in effect an accepted bill of exchange drawn against a deposit. Its amount is withdrawn from the deposit of the drawer, which is diminished to that extent, and the bank becomes liable ito the holder of the check. While the bank’s responsibility to him is much the same as though he held a certificate of deposit, the relation between them as debtor and creditor is still more analogous to the situation in that regard created by the bank’s acceptance of a bill of exchange. The holder of a certified check, which is payable on presentation, may refrain for a *73 considerable period from asking for payment, but he does not thereby become one of the class it was the intention of the Legislature to protect by the guaranty fund. He has made no deposit. He is merely a creditor who has delayed presenting his claim.” (Emphasis supplied.)
We disapprove the theory adopted by the Tax Commissioner and his finding and order.
It is our conclusion that amounts set aside by a bank on the designated November tax, day to redeem and satisfy the bank’s obligations created by certifying checks are not “deposits” as defined in Section 5324, General Code; that the bank is not required to include such amounts in its report of taxable deposits; and that the bank is not required to pay a tax thereon.
The order of the Tax Commissioner is disapproved and the decision of the Board of Tax Appeals is reversed.

Decision reversed..

Taft, Hart, Zimmerman, Stewart and Lamneck, JeL, concur.: